JOHN WIGGINS, BY NEXT FRIEND, v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 12 April, 1911.)

1. **Master and Servant—Contributory' Negligence—Evidence—Negligence.**

    In an .action for damages by one employed by a railroad company as a brakeman, alleged on account of his acting in obedience to instructions in getting on defendant's moving freight train: *Semble*, the evidence relied on to excuse him from contributory negligence, under the rule of the prudent man, would also exonerate the defendant from the charge of negligence.

2. **Master and Servant—Accepting Employment—Implied Knowledge.**

    By entering into a contract with a railroad company to perform the services of a brakeman on a freight train, there is an implied representation by the one thus accepting the position, nothing else appearing, that he knew the duties and how to perform them.

154—37

3. Same—Dangerous Employment—Instructing Servant—Duty of Master.

> It appears from the evidence that the plaintiff accepted a position with defendant railroad company as a brakeman on one of its freight trains, and after having safely gotten on the train several times when it was moving, he was injured on the day of his employment while attempting to get on a coal car with the train moving from 4 to 6 miles an hour; that he had been instructed at the time by the conductor to get on the caboose, which, from the arrangement of the steps, door, and side bars or holds, was less dangerous; and that it was customary for brakemen to get on the train when moving at the rate of speed of this one. The negligence alleged was the failure of the defendant to instruct plaintiff in the performance of his duties: *Held*, a motion to nonsuit plaintiff upon the evidence was properly allowed, as therefrom it did not appear that plaintiff was inexperienced or that any special instruction was required.

APPEAL by plaintiff from *Lyon, J.,* at the October Term, 1910, of DURHAM.

The plaintiff sues to recover damages for personal injuries. At the conclusion of the evidence, a judgment of nonsuit was entered, and the plaintiff appealed.

The plaintiff gives the following account of his injury: "I was 21 on 6 June, 1910. I worked for the defendant on 16 February, 1910. Had been living at a colored boarding-house nine months. Have been in Durham three years. About 6:30 that morning Sol. Williamson came after me. I went with him to the cab of defendant's train. It was standing near the colored hosiery mill. When I got there I went to the cab and got some matches and made a fire, as directed by Sol. Mr. Jordan was conductor, Mr. Sumpter engineer. It was a local freight and ran to Henderson and back the same day. It left at 6:30 in the morning and was due to get back at 3:30 in the afternoon. I was to get 90 cents a trip. We left Durham with seven or eight freight cars. I was told to help unload and shift cars and to ride in the caboose. The caboose was the last car. Sol. and myself were brakemen; Sol. in the front and I in the rear. We left Durham at 7:05 that morning. When we got to a station I would help unload and shift cars. When we would leave a station, I would catch the

train as it would start off, and I would wait for the caboose to come on and catch the caboose. I would catch the train as it was moving. There are eight or ten stations between Durham and Henderson. The conductor saw me when I would get on the car while it was moving. At Hesters he told me to drag back some flour, and the train was going on at the time. He told me to go in the depot and drag some flour back and I had to catch the train while it was running, after I had dragged back the flour. Defendant had handholds and footsteps to catch on. A footstep is about 1½ inches wide at the bottom and the handholds are round pieces of iron about the size of my thumb. The handhold is on the side of some cars and on the end of others. The footstep is on the bottom of the car and runs about a foot below the bottom of the car. At every station I would get out and help load and unload and shift cars. Part of the time the conductor rode in the caboose and part of the time he went across to the engine. At Henderson we were shifting cars on the yard, and the conductor told me to catch the cars and go to the top of them and tighten the brakes and keep them from hitting so hard. I caught the cars while they were running. Coming on back, I helped unload and to shift the cars. I was rear brakeman coming back and Sol. front brakeman. Sol. and I were colored. The conductor, engineer, and fireman were white. We got to Redwood, returning, about 4 o'clock. I got down off the train. Sol. cut loose the train, changed switches, and hollered for me to go up and tighten the brakes. These brakes did not go good, and the train had gone back on the main line and it coupled up and the engineer, Sumpter, hollered to me and told me to check it, and the car did not stop rolling. I chocked it on the upper end instead of the lower end. Sumpter jumped down from his engine and chocked the car and came on by me and went on to his engine and started it off. I would have caught it then, but he said something to me, I don't remember what he said. I went to the rear of the train. I got to the rear, but it was leaving so fast that before the rear got to me I thought I could not catch it, and I caught the third car from the rear, which was a coal

car. There were ten or twelve cars on this train. The coal car had handholds and footsteps on it. They had one sidetrack on the east side. By chocking a car I mean taking a stick or something and putting it under the wheels to keep it from rolling. I put the chock on the upper side. At the time the engineer got on his engine the caboose car was standing on the end of Neuse River bridge. There were four or five cars between me and the caboose. The train was running about 6 or 8 miles an hour when I caught the coal car. I caught at the coal car and it threw me under the track and both cars came after and the train ran over me and dragged me at least five yards to the end of the switch and threw me out just at the switch point."

Sol. Williamson, a witness for defendant, testified as follows as to the employment of the plaintiff, who is spoken of as John: "On 16 February, 1910, I was employed by defendant as brakeman on the local freight from Durham to Henderson. Mr. Jordan sent me to get Ernest Lyon. I was going after Ernest when I saw John. I asked him had he seen Ernest, and he said he was gone to the factory, and asked what I wanted with Ernest. I said I wanted him to go out with me. John said, 'Why didn't I give him the extra work?' I said, 'I did not know you wanted to lose a job for one day's work,' and he said that it would be all right, that he would take the extra; and said, 'Come on and see what the men said about it.' John goes on back up to the club with me, and when Mr. Jordan came he asked me was that the man I got, and I said that was the only man I got, and John said he had been railroading, and Mr. Jordan asked if he had worked on the railroad. John said he had, that he worked some with the Coast Line and some with the Seaboard. Mr. Jordan said: 'If you have worked for the Coast Line, I am satisfied you can work on this railroad.' He asked John how old he was, and John said between 21 and 22. Jordan said we have got to have some one, and we went off."

*Foushee & Foushee and Manning & Everett for plaintiff.*
*J. L. Morehead and F. L. Fuller for defendant.*

ALLEN, J.   There is no evidence in this case that the train was not properly equipped, and the plaintiff does not suggest that any appliance used by the defendant was defective.   He rests his case upon the principle that he was an inexperienced hand, and that he was not instructed as to the manner of getting on a moving train.   In order to excuse himself from the charge of contributory negligence, he says in his brief: "We submit it cannot be said as a matter of law, upon the evidence in this case, that a train moving at the rate of from 4 to 6 miles an hour, and when other train hands had caught it at the same time that plaintiff attempted to catch it, was moving so rapidly that a person of ordinary prudence would not make the attempt."   If the train was "moving at the rate of from 4 to 6 miles an hour" and not so rapidly "that a person of ordinary prudence would not make the attempt" to get on the train, and the plaintiff is therefore excused from the charge of contributory negligence, it would seem that the same facts would exonerate the defendant from the charge of negligence in moving its train too rapidly from its station.

The evidence does not, in our opinion, disclose that the plaintiff was inexperienced, or that any instructions would have given him information he did not have.

It is true, he was employed by the defendant the day he was injured, but he does not say he had no experience in the work he engaged to perform, and the fact that he entered into the contract of service, nothing else appearing, was a representation that he knew his duties and how to perform them.

It also appears that he told the agent of the defendant, who employed him, that "he had been railroading" and that he had worked some for the Coast Line and the Seaboard.   He testifies that he had gotten on the train, while in motion, several times before he was injured, and there is no evidence he had any difficulty in doing so.   We fail to see any instruction that would have given him information he did not have.

He also testifies that the conductor told him to catch the caboose car, and that he was injured by trying to get on a coal car.   The caboose had a door in the middle of the side

and had two steps below the door with wooden treads about as wide as a man's hand and they came closer to the ground than the steps on a coal car, and it also had a long curved handhold on each side of the door. The coal car had only one step and a straight handhold on the end of the car. It was obviously safer to catch the caboose.

We find no error, and the judgment is

Affirmed.